**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| AMERICA MARTINEZ, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 16-cv-2237 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| SGT. HAIN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Kane County's motion to dismiss [22], Defendant Kane County Sheriff Donald Kramer's motion to dismiss [25], and Defendants Kane County and Sheriff Kramer's motion to bifurcate Plaintiffs' claims under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) [41]. For the reasons set forth below, Defendant Kane County's motion to dismiss [22] is granted in part and denied in part, and Defendant Sheriff Kramer's motion to dismiss [25] is granted. Plaintiffs are given until January 13, 2017 to file a second amended complaint consistent with this opinion. The Court denies Defendants' motion to bifurcate as premature [41], but continues to stay all *Monell* discovery.

**I.      Background**

According to the operative complaint, the allegations of which must be assumed true at this stage of the case, on April 15, 2015, Plaintiffs America Martinez, Rodolfo Tapia, and Ismael Jaimes-Meza were driving through Kane County, Illinois when they were stopped by Defendant Sergeant Ronald Hain, an employee of the Kane County Sheriff's Office. Sgt. Hain called for backup and then conducted a search of all three Plaintiffs. In one of Meza's pockets, Sgt. Hain found $5,118 in cash and a debit card with a $566.62 balance, both of which were seized. Nothing else of note was found on Meza's person. Sgt. Hain handcuffed Meza and questioned

Tapia and Martinez. Sgt. Hain also conducted a search of Tapia's car, but did not find any contraband in the vehicle. All three Plaintiffs were transported to the Kane County Sheriff's Office. Tapia's car was also towed to the office, where it was searched again and ultimately seized by Sgt. Hain.

At the Sheriff's Office, Tapia and Martinez were handcuffed and all three Plaintiffs were strip-searched. Martinez and Tapia were then photographed, fingerprinted, dressed in orange jumpsuits, placed in holding cells, and held overnight. Martinez was denied the opportunity to make a phone call and neither Martinez nor Tapia were read their *Miranda* rights. The next day, Martinez and Tapia were released from the Sheriff's Office without being charged with a crime. The amended complaint is silent as to whether Meza was charged with any crime.

On May 15, 2015, Sgt. Hain encountered Tapia and Martinez again, this time driving Martinez's car. Sgt. Hain stopped them and searched the car, but did not find any contraband.

Based on this series of events, Plaintiffs filed a fifteen-count complaint against Sgt. Hain, various named and unnamed Kane County sheriff's officers, the Kane County Sheriff's Office, Kane County Sheriff Donald Kramer, and Kane County. Plaintiffs assert state law claims for false imprisonment and battery and claims under 42 U.S.C. § 1983 for unreasonable searches, unreasonable seizures, false arrests, and failures to intervene. Against Sheriff Kramer, Plaintiffs assert violations of Section 1983 for failure to train, supervise, or discipline officers of the Kane County Sheriff's Office under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) (Count XI). Plaintiffs assert the same *Monell* claim against Kane County (Count XIII), as well as a state law claim that Kane County must indemnify any Defendant Officers who are found liable for any federal claims (Count XIV). Sheriff Kramer moved to dismiss Count XI [25] and Kane County moved to dismiss Counts XIII and XIV [22]. While

those motions were pending, Sheriff Kramer and Kane County moved to bifurcate and stay all discovery related to Plaintiffs' *Monell* claims.

## II.      Legal Standard

To survive a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiffs' well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

## III.     Analysis

Under 42 U.S.C. § 1983, a person may sue anyone who, while acting under color of law, causes him to be deprived of any of his constitutional rights. 42 U.S.C. § 1983; *Connick v. Thompson*, 563 U.S. 51, 60–62 (2011). A municipality can be held liable under Section 1983 only "when execution of [its] policy or custom, whether made by its lawmakers or by those

whose edicts or acts may be fairly said to represent official policy," causes the constitutional deprivation. *Monell v. Dep't of Soc. Servs. of City of New York*, 536 U.S. 658, 694 (1978). A municipality cannot be held liable solely on a *respondeat superior* basis. *Id.* at 691. The Seventh Circuit recognizes three paths to municipal liability: "(1) through an express policy that, when enforced, causes a constitutional deprivation; (2) through a 'wide-spread practice' that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a 'custom or usage' with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with 'final decision policymaking authority.'" *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005) (quoting *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995)). Plaintiffs rely on the second prong for their two *Monell* claims.

To state a *Monell* claim, a plaintiff must plead "factual content that allows the court to draw the reasonable inference" that the municipality maintained a policy or custom that caused the alleged constitutional deprivation. *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). "The required level of factual specificity rises with the complexity of the claim." *Id.* at 616–17; *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010) ("A more complex case * * * will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected."). Mere "legal conclusions or elements of the cause of action" must be disregarded. *McCauley*, 671 F.3d at 617. Thus, "boilerplate" allegations that repeat the elements of a *Monell* claim without any further factual content are dismissed for failure to state a claim. See, *e.g.*, *Falk v. Perez*, 973 F. Supp. 2d 850, 864 (N.D. Ill. 2013) ("[B]y alleging 'widespread practices,' 'customs,' and 'unofficial policies,' Plaintiff merely states boilerplate legal conclusions that are the elements of her *Monell* claim."); *Annan v. Vill. of Romeoville*, 2013

WL 673484, at *6 (N.D. Ill. Feb. 25, 2013) (holding that an allegation that defendant "maintains a policy by which officers use excessive force to arrest individuals with no probable cause or reasonable suspicion warranting such" was insufficient to state a *Monell* claim); *Sheppard v. Vill. of Glendale Heights*, 2011 WL 6102012, at *4 (N.D. Ill. Dec. 5, 2011) (holding that an allegation that plaintiff was discriminated against on the basis of her sex and race "pursuant to wide-spread practice" of the defendant village was insufficient to state a *Monell* claim).

In order to prevail on a *Monell* claim, a plaintiff also must be able to show that the municipality's policy was the "moving force" behind the alleged injury; that is, a plaintiff "must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997); see also *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012). The Court reviews both *Monell* claims under this standard.

Plaintiffs' Monell claims against Kane County and Sheriff Kramer are largely identical. Both involve an alleged failure to train, supervise, or discipline officers of the Sheriff's Office. As the Supreme Court has cautioned, a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. Plaintiffs allege that these Defendants "directly encourage[d]" and were "the moving force" behind the following alleged constitutional violations:

- "[p]rolong[ing] citizens' detentions pursuant to traffic stops without a legally sufficient basis;"

- "[s]earch[ing] vehicles without legal justification during those stops;"

- "[s]eiz[ing] citizens' property without legal justification as a result of those stops;"

- "[s]trip-searching citizens without legal justification," "who are not charged with a crime," "who are not charged with the predicate offenses identified in 725 ILCS 5/103-1(c)," or "without the written permission of the police commander or an agent

thereof designated for the purpose of authorizing a strip search under 725 ILCS 5/103 et. seq.;"

- "[f]ailing to prepare a written report of strip searches";

- "[w]ithout legal justification, tak[ing] actions that constitute an arrest, including * * * [h]andcuffing and transporting citizens to [the Sheriff's] Office; [p]hotographing, fingerprinting, and strip searching citizens; and [f]orcing citizens to change into jumpsuits and detaining the citizens in a holding cell";

- "fail[ing] to inform citizens of their Miranda rights;"

- "deny[ing] citizens their right to an attorney;" and

- "[c]onspir[ing] to cover up the false arrests by characterizing them as 'investigative holds.'"

[20, ¶¶ 294, 297, 300, 315, 318, 320.]  Plaintiffs' *Monell* claims are high on the complexity scale, consisting of roughly nine distinct "widespread practices"—violating multiple constitutional amendments—purportedly corrupting the entire Kane County Sheriff's Office.  The questions raised by Defendants' motions are largely whether Plaintiffs have pled sufficient factual specificity to satisfy Rule 8.  The Court turns first to Kane County's motion.

### 1. Kane County's Motion

#### A. *Monell* Claim

Kane County argues that Plaintiffs fail to state a *Monell* claim against it as a direct defendant because the County lacks authority to train, supervise, or discipline officers of the Kane County Sheriff's Office as a matter of law.  [23, at 2–3.]  Under Illinois law, Sheriff Kramer and the other Kane County Sheriff's Office officers are not County employees.  *Id.* Defendants also argue that Plaintiffs have not pled sufficient facts to show *Monell* liability. Plaintiffs argue in response that the County is still liable for its own actions under Section 1983 because it "directed funds appropriations to and worked in concert with the Kane County Sheriff to encourage and facilitate the unconstitutional actions."  [34, at 1.]

In Illinois, a county sheriff is an "'independently elected county officer and is not an employee of the county in which the sheriff serves.'" *Askew v. Sheriff of Cook Cty., Ill.*, 568 F.3d 632, 636 (7th Cir. 2009) (citation omitted). Although Illinois sheriffs may be agents of their county, they are not subject to their county's control. See *Thompson v. Duke,* 882 F.2d 1180, 1187 (7th Cir. 1989) ("Cook County itself has no authority to train the employees involved or to set the policies under which [the sheriff's employees] operate."); *Moy v. Cty. of Cook*, 159 Ill. 2d 519, 532 (1994) ("The county is given no authority to control the office of the sheriff."). "[T]he lack of identity between the county sheriff's department and the general county government indicates that § 1983 suits against sheriffs in their official capacities are in reality suits against the county sheriff's department rather than the county board." *Franklin v. Zaruba*, 150 F.3d 682, 686 (7th Cir. 1998). Accordingly, courts routinely dismiss *Monell* claims against counties predicated on alleged misconduct by the sheriff's office.[1]

Against this backdrop, Plaintiffs make two main arguments—one legal and one factual. First, Plaintiffs argue that there are some circumstances in which a county may be liable directly under Section 1983 for conduct involving the sheriff's office. [See 34, at 3 (citing *Ross v. United States*, 910 F.2d 1422 (7th Cir. 1990); *Rivera v. Lake Cty.*, 974 F. Supp. 2d 1179 (N.D. Ill. 2013); *Moore v. Marketplace Rest., Inc.*, 754 F.2d 1336 (7th Cir. 1985)).] Those cases are of no

---

[1] See, *e.g.*, *Thompson,* 882 F.2d at 1187 (Plaintiff "cannot maintain a section 1983 action against Cook County for 'practices, policies, or actions'" of the sheriff.); *Ryan v. Cty. of DuPage,* 45 F.3d 1090, 1092 (7th Cir. 1995) ("It is plain that the county was properly dismissed; Illinois sheriffs are independently elected officials not subject to the control of the county."); *Remus v. Sheahan*, 2006 WL 418654, at *7 (N.D. Ill. Feb. 16, 2006) ("The County argues that it cannot be held directly liable based on the official liability of the Sheriff. That is correct because the Department is a separate entity from the County."); *Fairley v. Andrews*, 300 F. Supp. 2d 660, 670 (N.D. Ill. 2004) ("Cook County cannot be directly liable because it has no authority over the Cook County Sheriff or his deputies."); *Wallace v. Masterson*, 345 F. Supp. 2d 917, 922 (N.D. Ill. 2004) ("Thus, the Court follows the long line of precedent holding that a county is not liable under § 1983/*Monell* in these circumstances."); *Horstman v. Cty. of DuPage*, 284 F. Supp. 2d 1125, 1130 (N.D. Ill. 2003) ("The Seventh Circuit has explicitly ruled that Illinois counties are not liable for their sheriffs' actions under *Monell*"); *Potochney v. Doe*, 2002 WL 31628214, at *2 (N.D. Ill. Nov. 21, 2002) ("Sheriff Ramsey's Department is not subject to the County's control and, therefore, liability cannot be imputed to the County based on Sheriff Ramsey's actions.").

help to Plaintiff.  In *Ross*, the county "entered into an intergovernmental agreement that required the county to provide all police services" in a specific jurisdiction, and the county and sheriff promulgated a rescue policy that allegedly caused the plaintiff's death.  910 F.2d at 1424–25. Plaintiffs do not allege any analogous intergovernmental agreement whereby Kane County assumed the obligation to provide the police services at issue here or promulgated a particular policy regarding traffic interdictions or asset forfeitures.  In *Rivera*, the plaintiff "acknowledge[d] that Lake County is not liable independently under § 1983 for *Monell* theories asserted against the Lake County Sheriff's Department."  *Id.* at 1189.  The court found, however, that the plaintiff had stated a *Monell* claim "for actions taken by [an inter-agency] Task Force," which had an "independent legal existence, an organizing agreement, a budget, and operational staff."  *Id.* at 1189–90, 1197.  Here, Plaintiffs assert a *Monell* claim against the County based on the Sheriff's Office's conduct, not an independent inter-agency law enforcement task force.  In *Moore*, the Seventh Circuit affirmed dismissal of a *Monell* claim against a county based on the fact that the "complaint lacks specific allegations of any pattern of inaction or lack of enforcement" by the county in response to certain bonding procedures at a jail and "no evidence was presented as to the county's degree of culpability as a separate entity apart from its officers." *Id.* at 1356.  Plaintiffs do not explain how their complaint does any better.[2]

---

[2] Plaintiffs also cite three related cases decided by Judge Coar in 1997 that "concluded that an Illinois county is liable under § 1983 for the actions of the Sheriff's offices."  [34, at 3 n.3 (citing *Hernandez v. Cty. of DuPage*, 1997 WL 598132 (N.D. Ill. Sept. 19, 1997); *Cruz v. Cty. of DuPage*, 1997 WL 589463 (N.D. Ill. Sept. 17, 1997); *Buckley v. Cty. of DuPage*, 1997 WL 587594 (N.D. Ill. Sept. 17, 1997)).] Plaintiffs charitably describe the analysis from these cases as "not fully adopted in this District."  *Id.*  In reality, other courts in this district have rejected these cases.  See *Wallace*, 345 F. Supp. 2d at 927 n.4 *Horstman*, 284 F. Supp. 2d at 1130–31, *Fairley*, 300 F. Supp. 2d at 669–70; *Potochney*, 2002 WL 31628214, at *2 n.3; *Remus*, 2006 WL 418654, at *7; see also *DeGenova v. Sheriff of DuPage Cty.*, 18 F. Supp. 2d 848, 851 (N.D. Ill. 1998).  Those courts persuasively address why *Thompson* and *Ryan* remain good law following Seventh Circuit's decision in *Zaruba*, which was decided the year after *Hernandez* and reaffirmed the earlier Seventh Circuit cases that Judge Coar found inconsistent with *McMillian v. Monroe Cty.*, 520 U.S. 781 (1997).  "Accordingly, this Court joins with its colleagues who have, in the

Second, Plaintiffs argue that they have pled sufficient facts to show that the County is liable under Section 1983 "for its own actions" and role in Plaintiffs' alleged harm. [34, at 3.] Specifically, Plaintiffs assert that the County "directed funds * * * that were used to pay Desert Snow, LLC, [a private company] to train Kane County Sheriff's employees on how to extend the legally-justified duration of a traffic stop, to conduct illegal searches, and to commence asset forfeiture proceedings absent legal justification." *Id.* at 1–2. County funds were also used to "cover any expenses related to the database Black Asphalt, which allows law enforcement officials from around the country submit and/or retrieve personal details of tens of thousands of persons for the purpose of facilitating the aggressive, illegal asset forfeiture to which Plaintiff was subjected." *Id.* at 2. The amended complaint also states that Kane County "directly encourages the unconstitutional use of asset forfeiture by * * * [a]cquiescing to" Sgt. Hain's "employment with Desert Snow." [20, ¶ 318(A).] Finally, Plaintiffs claim that the County "promoted" these tools, "continued to accept money from asset forfeiture[,] and continued to fund the mechanisms through which these actions were taking (e.g., directing payments for asset forfeiture training and covering any expenses related to Black Asphalt," "despite knowing that Sheriff's Office employees were taking these unconstitutional actions to further Defendant Kane County's financial goals." *Id.* at 2–3.

To start, none of these "actions" by the County relate to strip-searches, arrests, police station detentions, the right to counsel, the right to remain silent, or investigative holds. Plaintiffs do not offer any facts suggesting that these widespread practices exist, let alone that these practices were the moving force behind Plaintiffs' alleged constitutional harms. Given the complex, sweeping dimensions of these "widespread practices," Plaintiffs' failure to provide any

---

wake of *Zaruba,* respectfully declined to follow *Hernandez* and instead have applied *Zaruba* and its Seventh Circuit predecessors." *Wallace*, 345 F. Supp. 2d at 927.

factual support requires dismissal of their *Monell* claim against the County tied to these specific alleged violations. [See 20, ¶¶ 315(D)–(F)]; *McCauley*, 671 F.3d at 616–17.

The only "violations" in which the County allegedly "played [a] role" relate to traffic stops, roadside searches and seizures, and asset forfeitures. [34, 1–4.] Stripped of rhetoric, Plaintiffs' argument is that they can state a *Monell* claim against the County because (1) county-appropriated money was used to pay for access to a law enforcement database and highway interdiction training programs; (2) the County "accepted" money seized from highway interdictions to further its fiscal goals; (3) the County "promoted" these programs; and (4) the County "acquiesced" to Sgt. Hain's "employment" with Desert Snow.

The Court can easily dispose of the latter three points. Illinois law controls how forfeited assets are distributed, and counties are not one of the recipients. See 720 Ill. Comp. Stat. Ann. 570/505(3)(g). The bare allegation that the County "financially benefits" by "accepting" funds generated through asset forfeitures is unsupported and erroneous. Likewise, the 329-paragraph amended complaint does not include a single factual allegation about how the County "promoted" Black Asphalt or Desert Snow. The claim that the County "acquiesced" in Sgt. Hain's Desert Snow employment is equally conclusory.

More fundamentally, the allegations about Desert Snow appear to be little more than window dressing. Desert Snow is not a defendant. The amended complaint does not state that any relevant officer other than Sgt. Hain was trained by Desert Snow; that the County actually funded Desert Snow trainings;[3] or that specific Desert Snow training was employed in connection with Plaintiffs' traffic stops, searches, and detentions. Even Sgt. Hain's Desert Snow

---

[3] While Plaintiffs' response brief asserts the County "directed funds appropriations that were used to pay Desert Snow" [34, at 1], that allegation does not appear in the amended complaint. Rather, the amended complaint states vaguely that Kane County, "through the appropriation of public funds, provided the funds that the Kane County Sheriff used to pay for training of Kane County Sheriff Office officers on the subject of highway interdiction and asset forfeiture." [20, ¶ 28 (capitalization altered); see also *id.* ¶ 319.]

training related to only "highway interdiction" [20, ¶ 26]—not any specific unconstitutional conduct that Plaintiffs assert occurred here. As presently pled, there is simply no plausible connection between Desert Snow and the incidents here. But even if Plaintiffs could allege a more meaningful nexus to these events, the County's knowledge that *one* officer worked for Desert Snow could not equate to an "unlawful practice [that] was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision" that could establish the County's direct liability. *Phelan v. Cook Cty.*, 463 F.3d 773, 790 (7th Cir. 2006).

That leaves Plaintiffs' argument that they can show *Monell* liability because the County appropriated public funds for Black Asphalt and highway interdiction trainings. This argument does not fare any better. Merely appropriating funds is not one of the three paths to municipal liability described by *Calhoun*, and Plaintiffs do not identify a single case holding that a municipality who does nothing more than "provide[] funds used to cover any expenses" through its general appropriations process is sufficient to impose *Monell* liability in these circumstances. In fact, it appears that counties like Kane County are *required* by state law to reimburse expenses related to such contractual services, undercutting any claim of acqueisence amounting to a policy decision. See 55 Ill. Comp. Stat. Ann. 5/3-6018 ("Subject to the applicable county appropriation ordinance, the sheriff shall direct the county treasurer to pay, and the treasurer shall pay, the expenditures for the sheriff's office, including payments for personal services, equipment, materials and contractual services."). Like Desert Snow, the amended complaint merely alleges that Defendants were "involved" with Black Asphalt [see 20, at C], not that the Black Asphalt database was used in connection with the events of April 15 or May 15, 2015. And there is nothing inherently improper about funding asset forfeiture and highway interdictions trainings

for law enforcement.  Therefore, Plaintiffs fail to allege sufficient facts showing that Kane County can be liable under *Monell*, and Count XIII must be dismissed.

### B.        State Law Indemnity Claim

Count XIV asserts a claim for indemnification against the County under the Illinois Government and Government Employee Tort Immunity Act, 745 Comp. Stat. Ann. 10/9–102, which provides that a local public entity, such as a county, must "pay any tort judgment or settlement for compensatory damages * * * for which it or an employee while acting within the scope of his employment is liable."  The County argues that this statute does not provide a private right of action against the County, but concedes that it is a necessary party to this lawsuit and should remain in this case as indemnitor of the Sheriff's Office in the event it is held liable. [23, at 4–5]; *Carver v. Sheriff of LaSalle Cty., Ill.,* 324 F.3d 947, 948 (7th Cir. 2003).  Plaintiffs' argument focuses on how the County is a necessary party, which is undisputed.  [34, at 4–5.]

The County is correct that 745 Comp. Stat. Ann. 10/9–102 "does not bestow a right of action whereby a plaintiff may sue a municipality directly."  *Horstman*, 284 F. Supp. 2d at 1131 (N.D. Ill. 2003) (citing *Wilson v. City of Chicago*, 120 F.3d 681, 685 (7th Cir. 1997)); accord *Taitts v. Verpill*, 2012 WL 1068753, at *7 (N.D. Ill. Mar. 29, 2012).  But Count XIV is stated conditionally:  "should one or more of the Defendants be found liable for any of the federal claims in this action, Plaintiffs demand that Kane county pay to Plaintiffs any judgment (other than punitive damages) obtained in this action against one or more Defendants, pursuant to 745 ILCS 10/9-102."  [20, at 44–45 (capitalization altered).]

While Count XIV is not an independent basis for substantive liability against the County, courts permit "an indemnification claim conditioned on a possible judgment against the Defendant Officers" to survive where indemnification remains a possibility.  *Perkins v.*

*O'Shaughnessy*, 2011 WL 579333, at *3 (N.D. Ill. Feb. 9, 2011); accord *Miles v. Vill. of Dolton*, at *8 (N.D. Ill. Mar. 23, 2016); *Grayson v. City of Aurora*, 157 F. Supp. 3d 725, 748 (N.D. Ill. 2016); *Tillman v. Burge*, 813 F. Supp. 2d 946, 981 (N.D. Ill. 2011); *Kitchen v. Burge*, 781 F. Supp. 2d 721, 740 (N.D. Ill. 2011). "The majority of courts that have considered the issue have determined that there is no reason why a plaintiff should not be permitted to proceed with an indemnification claim under § 10/9-102 before his actions against municipal employees are final." *Griffin v. Meagher*, 2009 WL 5174684, at *5 (N.D. Ill. Dec. 21, 2009) (collecting cases). Allowing Plaintiffs' indemnification claim to survive dismissal "may be more efficient than requiring [Plaintiffs] to wait until final judgment [to assert this claim] and will not prejudice the Defendant Officers or the [County]." *Perkins*, 2011 WL 579333, at *4; accord *Wilson*, 120 F.3d a 684–85 (recognizing there is no benefit in requiring a plaintiff to initiate proceedings at a later date). Accordingly, the Court denies Kane County's motion to dismiss Count XIV.

### 2. Sheriff Kramer's Motion

Sheriff Kramer argues that Plaintiffs fail to state a *Monell* claim against him in his official capacity because the amended complaint identifies only one incident of alleged officer misconduct, not "a specific pattern or series of incidents that support the general allegation of a custom or policy" that could be sufficient for *Monell* liability. *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1237 (7th Cir. 1986). Plaintiffs argue that they have alleged "a plethora of facts demonstrating" Sheriff Kramer's involvement in the widespread practices that constitute constitutional violations.

Specifically, Plaintiffs argue that Sheriff Kramer "trains and encourages" the office's employees "to use aggressive techniques to unconstitutionally seize and forfeit people's assets." [33, at 1.] Sheriff Kramer allegedly knows that employees "commonly use techniques such as

unjustifiably extending the permissible duration of a stop, conducting illegal searches of a person, vehicle or property, and arresting persons absent probable cause," and hired Desert Snow to train employees on "how to extend the legally-justified duration of a traffic stop, to conduct illegal searches, and to commence asset forfeiture proceedings absent legal justification." *Id.* at 1–2. Moreover, the Sheriff "actually hosts" the Black Asphalt database and "acquiesced" to Sgt. Hain's "employment" with Desert Snow. *Id.* at 2; [20, ¶¶ 25, 298].

As with Kane County, Plaintiffs do not advance any factual allegations connecting Sheriff Kramer with alleged "widespread practices" involving strip-searches, police station detentions, the right to counsel, the right to remain silent, or investigative holds. Accordingly, Plaintiffs' *Monell* claim against Sheriff Kramer for these alleged constitutional violations are dismissed. [20, ¶¶ 294(D), 294(E)(ii)–(iii), 294(F)–(H).] Likewise, Plaintiffs do not do a better job of explaining how Sheriff Kramer's hosting of the Black Asphalt database or acquiescence in Sgt. Hain's Desert Snow employment constitute "widespread practices," or how those facts are connected with Plaintiffs' traffic stops. Defendants also correctly note that Plaintiffs' remaining arguments—that Sheriff Kramer trains employees on "unconstitutional" techniques, that employees "commonly" employ these unconstitutional techniques in traffic stops, searches, and arrests, and Sheriff Kramer hired Desert Snow to train employees on illegal practices—are either unsupported or missing from the amended complaint. "It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss," and Plaintiffs cannot shore up the defects in the amended complaint by adding new "facts" to the background section of its response brief. *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989).

But even if all of these allegations were read into the complaint, "[t]he bulk of [Plaintiffs'] 'facts' are just conclusory statements—catch phrases exhumed from other successful

*Monell* cases, strung together in a kitchen-sink pleading approach—that have become all too common in *Monell* claims raised in non-*pro-se* § 1983 cases." *Maglaya v. Kumiga*, 2015 WL 4624884, at *5 (N.D. Ill. Aug. 3, 2015). A plaintiff cannot allege a single transgression, add vague boilerplate that this transgression resulted from a "widespread practice," and then proceed to discovery in the hopes of finding factual support for a *Monell* claim. *Id.*; see also *Falk*, 973 F. Supp. 2d at 864 ("Plaintiff names the wrongs she suffered and alleges that they resulted from a policy or custom. These bare allegations of a policy or custom are not entitled to the presumption of truth."); *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985).

Here, there are no factual allegations about, for example, what specific "aggressive techniques" Sheriff Kramer "trains and encourages its employees to use" (other than the "illegal" ones), whether these specific "techniques" have resulted in similar complaints against Kane County Sheriff's officers, or whether any of those "techniques" were actually employed during the incidents involving Plaintiffs. *Cf. Hill v. City of Chicago*, 2014 WL 1978407, at *7 (N.D. Ill. May 14, 2014). Plaintiffs' claim that the Sheriff's employees "commonly use techniques" such as "conducting illegal searches" and "arresting persons absent probable cause" is equivalent to an allegation that there were widespread illegal practices, which were widespread and illegal. Neither allegation has factual content. In fact, Plaintiffs' allegations are nearly indistinguishable from *Annan*, where the plaintiff alleged that a municipality "maintains a policy by which officers use excessive force to arrest individuals with no probable cause or reasonable suspicion warranting such." *Annan*, 2013 WL 673484, at *6. The court dismissed that *Monell* claim because "[t]he Complaint contains no other allegations that would support the existence of this purported policy" and thus "this conclusory assertion is insufficient to establish the existence of a

policy or widespread practice that caused [the plaintiff's] alleged constitutional injuries." *Id.* The same is result is required here.

Plaintiffs have, at most, alleged "a single isolated incident of wrongdoing by a non-policymaker," which here is "insufficient to establish municipal acquiescence in unconstitutional conduct." *Cornfield by Lewis v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1326 (7th Cir. 1993). Accordingly, the Court grants Sheriff Kramer's motion to dismiss Count XI.

### 3. Bifurcation

Kane County and Sheriff Kramer have also filed a motion to bifurcate Plaintiffs' *Monell* claims under Rule 42(b). [See 41.] Plaintiffs have served extensive *Monell* discovery [see 42-1; 42-2], which the Court stayed on October 26, 2016 until it ruled on the motions to dismiss [49]. Because the Court now grants the motions to dismiss Plaintiffs' *Monell* claims, the motion to bifurcate [41] is denied without prejudice as premature. However, the possibility of *Monell* discovery has not been extinguished, as the Court has given Plaintiffs leave to amend their amended complaint. Accordingly, the Court continues to stay all *Monell* discovery, which either may be rendered moot if Plaintiffs do not revive these claims or these claims are subsequently dismissed or can be addressed in an appropriate motion to vacate or maintain the stay.

## IV. Conclusion

For the foregoing reasons, Kane County's motion to dismiss [22] is granted in part and denied in part, and Sheriff Kramer's motion to dismiss [25] is granted. The Court denies Defendants' motion to bifurcate without prejudice as premature [41], but continues to stay all *Monell* discovery. Plaintiffs are given until January 13, 2017 to file a second amended complaint.

Dated: December 13, 2016

_____

Robert M. Dow, Jr.
United States District Judge